J-A20014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RALPH A. FERRIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARYANN PETRI | |
| Appellant | No. 1443 WDA 2015 |

Appeal from the Order September 4, 2015
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): NS20150596

BEFORE:  BOWES, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 06, 2016**

Maryanne Petri ("Mother") appeals from the child support order entered on September 4, 2015, which established her monthly obligation for three children at $789.   We affirm.

Mother and Ralph A. Ferris ("Father") married on June 18, 1994, separated during 2002, and divorced on December 31, 2004.  The parties' three children were born during April 1998, March 2001, and July 2002 respectively.  Mother and Father initially shared equal physical custody of the children, and during 2013, Mother, a registered nurse, obtained a child support award in the amount of $300 per month.  The award was calculated using an assessed monthly earning capacity of $3,521.57 to determine Mother's income for the purposes of the support guidelines.  While Mother

disputed the court's determination of her earning capacity at every stage of those support proceedings, she did not appeal the trial court's final child support order.

The amicable custody arrangement between Mother and Father quickly deteriorated, and following an "indicated" report that Mother perpetrated emotional abuse against one of the children, Father obtained primary physical custody of the children during 2015.[1]  As Mother was limited to partial physical custody on alternating weekends, her support was terminated, and on April 24, 2015, Father filed the complaint for child support that is the genesis of this appeal.

Following a support conference, the trial court's domestic relations section entered an interim order awarding Father $789 per month in child support and $90 toward arrears.  While the parties agreed upon Father's net monthly income, which was documented by his federal tax return for 2014, Mother's earnings were again contested.  Mother argued that she no longer had the earning capacity that was assessed in the former case because she lost her child abuse clearances under the Child Protective Services Law

---

[1] The Child Protective Services Law recognizes three types of child abuse reports: 1) an "Indicated report" is an agency determination that is supported by substantial evidence of alleged abuse based upon its own investigation; 2) a "Founded report" has been verified by a judicial adjudication of guilt, guilty plea, or plea of no contest; and 3) an "Unfounded report" is any report that is determined to be neither indicated nor founded.

("CPSL") as a consequence of the founded allegation of abuse and could not work in the positions that she previously held. Father countered that Mother's earning capacity was established in the prior proceeding and that the identical figure should be used in the present case. The domestic relations section agreed and assessed Mother a net earning capacity of $3,521.57 in light of the prior assessment and Mother's education and work experience.

Mother demanded a *de novo* support trial, arguing that she had been unemployed for seven months due to the allegations of abuse and that she could only work one day per week as a result of related stress and mental health issues. Father's income was not in dispute. At the outset of the September 4, 2015 hearing, Father's attorney reminded the trial court of the prior support proceedings that the court presided over during 2013, in relation to Mother's support complaint. Father posited that Mother should be held to the same earning capacity that the court assessed at the close of the 2013 proceeding. The trial court stated that it understood the relevant issues and invited Mother to proffer testimony.

Mother testified that, prior to January 2015, she earned approximately $27 per hour as an emergency room nurse at St. Vincent Hospital. She worked four twelve-hour shifts per two-week pay period, *i.e.* twenty-four hours per week. In January 2015, the hospital suspended her without pay as a result of the indicated finding of abuse. She returned to work during

July 2015, when the indicated finding was expunged from her record and she was eligible to receive the required child abuse clearances.[2] While she received a two-dollar per hour raise upon her return to work, she reduced her employment to one four-hour shift per week. Mother asserted that the reduction was due to her diagnoses of anxiety and depression. She attempted to verify her mental health conditions by introducing two physician verification forms that had been completed by her psychiatrist and her primary care physician; however, the trial court sustained Father's objection to the documents as untimely under Pa.R.C.P. 1910.29(b)(2) (party must serve the physician verification form no later than twenty days after the support conference). After sustaining the objection, the court reiterated, "I also understand that these issues have been before the court significantly before." N.T., 9/4/15, at 11-12.[3] Following the hearing, the

_____

[2] Days after an administrative law judge expunged the agency's "indicated" finding of emotional abuse, Erie County Child and Youth Service issued a fresh "indicated" finding of abuse against Mother in relation to one of the other children. Mother's appeal from the latter determination was pending when the support hearing occurred. N.T., 9/4/15, at 3, 7-8, 12. Father avers in his brief that the second indicated report was also expunged. Father's brief at 5 n.4.

[3] We observe that, to the extent that the trial court indicated that it heard evidence regarding Mother's mental health problems during the 2013 proceedings, the record does not support that finding. The current allegations of anxiety and depression did not arise until 2015, supposedly concomitant with the loss of shared physical custody of the children and the leveling of indicated reports that she perpetrated emotional abuse. Stated
*(Footnote Continued Next Page)*

- 4 -

trial court sustained the domestic relations section's award to Father of $789 per month child support (plus $90 toward arrears) and entered that award as a final child support order. This appeal followed.

Mother complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In its ensuing Rule 1925(a) opinion, the trial court misstated the procedural posture of this matter as an appeal from Mother's petition for modification of an existing support order, and it cited legal authority relevant to the review of that type of petition. In addition, in reaching its ultimate determination, the trial court found that the circumstance that led to Mother's inability to obtain her CPSL clearances, *i.e.*, the allegation of abuse, was tantamount to Mother's voluntary reduction of income under Pa.R.C.P. 1910.16-2(d)(1) and concluded that Mother did not adduce evidence to establish that she attempted to find alternative employment in order to mitigate the lost income. This appeal followed.

Mother presents three questions for our review:

> 1. Whether the trial court abused its discretion by ignoring significant factors beyond Mother's control that had material, adverse impacts on her ability to work at her established place of employment . . . as well as to earn income in general; *i.e.*, frivolous [abuse] cases that [delayed] . . . necessary clearances to work with patients[.]

*(Footnote Continued)* ─────────────

plainly, we do not rely on this aspect of the trial court's recollection of the 2013 proceedings.

- 5 -

2.    Whether the trial court abused its discretion in disregarding valid Physician Verification Forms [confirming her] health issues.

3.    Whether the trial court abused its discretion in assigning Appellant [an earning capacity] based upon full-time work . . . when her employment history since 2002 [was not] full-time [sic].

Mother's brief at 5.[4]

We previously stated "[t]he principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *R.K.J. v. S.P.K.*, 77 A.3d 33, 37 (Pa.Super. 2013). A parent's duty to provide for his or her children financially is absolute "even if it causes hardship or requires sacrifice." *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1007-1008 (Pa.Super. 2015); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 638 (2003). Upon review of a child support order, we apply the abuse of discretion standard and we "may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *R.K.J.*, *supra*. "An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the

_____

[4] Father's argument focuses upon the testimony adduced during the 2013 trial and items in Mother's reproduce record. As neither the notes of testimony from the related, but distinct, child support case nor the pertinent contents of the reproduced record are included in the certified record, we may not consider them herein. Hence, Father's brief is of little value to our review.

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Id.*

We address Mother's three issues jointly. The crux of Mother's collective contention is that the trial court erred in assessing an earning capacity, rather than utilizing her actual income, in calculating her child support obligation under the support guidelines. Preliminarily, Mother assails the trial court's mischaracterization of this case as an appeal from a petition to modify an existing support order. She argues that the misstep is either "a breath taking level of incompetence" or "a deliberate effort to deceive [this Court about] the nature of the case." Mother's brief at 11. She highlights that the current support matter is listed under a different docket number than the support order entered in 2013 and notes that the parties have exchanged roles of obligor and obligee since 2013. The second component of Mother's argument is that, in light of the trial court's misstatement of the underlying proceedings as a petition for modification, the court's assessment of earning capacity was improper because Father did not demonstrate that she hid income or that a discrepancy existed between income and training. The final aspect of the argument challenges the trial court's finding that Mother's employment issues relating to her inability to obtain CPSL clearances was tantamount to a voluntary reduction in income that would warrant utilizing an assessed earning capacity over actual earnings. No relief is due.

We define earning capacity as "that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa.Super. 2000)(citation omitted). Pursuant to Pa.R.C.P. 1910.16-2(d)(4), which permits the trial court to impute an income equal to a party's earning capacity, the trial court is directed to engage the following considerations:

> *Earning Capacity*. Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

Instantly, the trial court erred in treating Mother's *de novo* appeal from the conference officer's interim order as a petition for modification. However, the misstep was harmless insofar as Rule 1910.16-2(d)(4) permits the trial court to impute an earning capacity in this case that was equal to the amount the court attributed to Mother in 2013. Significantly, we observe that the trial court did not simply apply that amount mechanically as

the law of the case. Rather it considered the factors enumerated in Rule 1910.26-2(d)(4), and noted that several of the factors remained unchanged since the earlier proceeding. The fact that the present case is listed under a different docket number than Mother's 2013 complaint or that Mother and Father have exchanged roles as support obligor and obligee since 2013 are irrelevant to the determination of Mother's monthly income for purposes of calculating her obligation under the support guidelines. The key factors for the court's consideration were Mother's training, health, work experience, and earnings history. All of these factors were either unaffected by the passage of time or were addressed by the trial court during the *de novo* hearing. Hence, we reject Mother's assertion that the trial court's mischaracterization of the case as a petition to modify an existing order is tantamount to reversible error. The trial court was familiar with the facts of this case and while Mother introduced evidence of her current employment status, as discussed *infra*, she did not establish that any of the factors had changed in any meaningful way.

The second aspect of Mother's argument is that Father did not demonstrate that earning capacity was warranted. Specifically, she argues that Father could not establish that she failed to obtain appropriate employment or hid income, or that a discrepancy exists between her training and actual income. The certified record belies this assertion.

While Mother is not hiding income, during the evidentiary hearing, she testified that despite her training, experience, and ability to earn between $27 and $29 per hour, she elected to work twenty-four hours per week prior to her suspension during January 2015 and only four hours per week following her reinstatement. Hence, Mother's actual income is incongruous with her established earning capacity. Although Mother claimed that stress and mental health problems prevented her from working more than four hours per week, she did not introduce evidence to support her claim. Recall that the trial court sustained Father's objection to the two physician verification forms that Mother attempted to introduce and found her unsubstantiated testimony incredulous.

As the propriety of the trial court's evidentiary ruling may be dipositive of Mother's current argument, we address this question at the outset. Essentially, Mother assails the trial court for sustaining Father's objections to the two completed physician verification forms that she attempted to introduce into evidence. Physician verification forms are specific documents whose form, use, and admissibility is governed by Pa.R.C.P. 1910.29. The documents are used in support cases to verify that a parent has a medical condition that affects his or her ability to earn income over a specific period of time. Pursuant 23 Pa.C.S. § 4342(f), the forms are not subject to hearsay exceptions. They are, however, subject to a notice requirement under Rule 1910.29(b)(2), which requires the documents to be served "on

- 10 -

the other party not later than 20 days after the [support] conference" and the petitioner to allow 10 days for the other party to object to the document. If proper notice is provided and there is no objection, the form must be admitted into evidence without the physician's testimony. Rule 1910.29(b)(2). However, where notice was not provided and/or an objection is leveled, "the rules of evidence apply to determine the document's ultimate admissibility." *See* Rule 1910.29, Explanatory Comment—2000.

We recently reiterated, "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *K.T. v. L.S.*, 118 A.3d 1136 (Pa.Super. 2015). Herein, the trial court sustained Father's objection to the physician certification forms because Mother neglected to provide the required 20-days' notice of the forms. The certified record confirms not only that Mother failed to comply within 20 days of the support conference, but also that, despite two continuances that delayed the hearing from August 18, 2015 to September 24, 2015, Mother neglected to serve the forms upon Father at all. By failing to serve the forms on Father, Mother denied him the opportunity to review the documents and level any substantive objections to their admission without the examining physicians' testimony. Under these circumstances, we cannot

discern an abuse of discretion in the trial court's decisions to sustain Father's objection to the admission of the two forms.

As the trial court properly excluded the physician verification forms pursuant to Rule 1910.29(b), the court examined Mother's bare assertion that her anxiety and depression prevented her from working in any meaningful manner. As noted, the trial court found Mother's testimony unpersuasive. Since credibility determinations are squarely within the purview of the fact finder, we have no basis to disturb the trial court's conclusion that Mother's reduced employment was properly considered voluntary under the guidelines and that she did not make any reasonable attempts to mitigate her lost income.[5]

Finally, we rebuff Mother's assertion that it was unfair for the trial court to assess her with a full-time earning capacity at this stage of her career when she traditionally limited her employment to approximately twenty-hours per week while the family was intact. Even considering

---

[5] In light of the fact that the initial allegation of abuse was expunged, we reject the trial court's rationale that Mother's unpaid suspension between January and July 2015 was tantamount to a voluntary reduction in employment. However, to the extent that Mother is terminated or endures another unpaid suspension based upon a substantiated allegation of abuse, we would agree with the trial court that those consequences would constitute a voluntary reduction in income under the guidelines. Absent these additional facts, however, our holding is based upon Mother's decision to reduce her work load to four hours per week notwithstanding her ability to secure the required CPSL clearances.

Mother's typical schedule, the discrepancy between Mother's training, work history, and wage rate and her current income is palpable. It is beyond argument that Mother worked at least twenty hours per week while managing an intact family or at least maintaining equally shared physical custody of three children. Now that those constraints have been lifted, logic would dictate that Mother has additional time to dedicate to her employment. Mother's unqualified financial obligation towards her three children is not negated by the strain of everyday life. Thus, for all of the foregoing reasons, we find the the trial court did not abuse its discretion in assessing Mother a fulltime employment wage, even though prior circumstances, that are no longer applicable, dictated that she maintain a part-time schedule. Mother's claim fails.

In sum, the certified record reveals that upon considering Mother's earning history, current earnings, and the prevailing economic conditions, the trial court reasoned that Mother's earning capacity should more accurately reflect her earning potential rather than her actual income. As the trial court's rationale adressed the appropriate considerations enumerated in Rule 1910.16-2(d)(4) and was not the result of partiality or ill-will, we cannot find a basis to disturb its conclusion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/6/2016